**In re METRO CONCRETE CORP., Debtor.**

**METRO CONCRETE CORP., Plaintiff,**

**v.**

**DeFILLIPIS TOWER CRANE CORPORATION, Crum & Forster—United States Fire Insurance Company of Pittsburgh, and American Home Insurance—American International Companies, Defendants.**

**Bankruptcy No. 889–90567–20.
Adv. No. 891–8078–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Aug. 12, 1993.

Jesse I. Levine, Jesse I. Levine, P.C., Garden City, NY, for Metro Concrete Corp.

Harold A. Craig, Craig & Jacobson, East Islip, NY, for Royal Ins. Co.

Harriet D. Feuer, Alio and Cajati, New York City, for DeFillipis Tower Crane Corp.

Ira Greenhill, New York City, for Crum & Forster and U.S. Fire Ins. Co. of Pittsburgh.

Michael C. Modansky, Bivona & Cohen, New York City, for American Home Ins. Intern. Companies.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT, PARTIAL SUMMARY JUDGMENT, AND TO INTERVENE

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Three motions are before the Court: the first is a motion for summary judgment ("Motion") by an above-referenced co-defendant, United States Fire Insurance Company (sued as Crum & Forster—United States Fire Insurance Company of Pittsburgh, hereinafter "Crum & Forster"). The Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Federal Rules"), made applicable herein by

Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). The second motion before the Court is plaintiff Metro Concrete Corp.'s ("Metro") cross-motion for partial summary judgment ("Cross-motion"); the third motion is that of Royal Insurance Company of America ("Royal"), insurer of co-defendant DeFillipis Tower Crane Corporation ("DeFillipis"), pursuant to which Royal seeks an order authorizing it to intervene as a third-party plaintiff against Metro ("Intervention Motion"). Royal's Intervention Motion is made pursuant to section 1109(b) of title 11, United States Code ("Bankruptcy Code") and Federal Rule 24(a).

The Court has jurisdiction over this case pursuant to sections 157(a), (b)(1) and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (C) and (O) of title 28.

For reasons set forth below, the Court holds that (1) Crum & Forster's Motion for summary judgment is **DENIED**; (2) Metro's Cross-motion for summary judgment is **DENIED**; and (3) Royal's Intervention Motion is **GRANTED**; Royal may file and serve its complaint on or before September 10, 1993. All parties are directed to appear by their counsel before the Court for a pretrial hearing on October 28, 1993 at 9:30 a.m.

## RELEVANT FACTS

From May through August, 1986, Metro, a construction firm, leased a Kodiak Luffing Boom Tower Crane, model KL–250 ("Crane"), from DeFillipis. During the period of the lease, the Crane was serviced by DeFillipis for certain problems. On August 7, 1986, the Crane was rendered totally inoperable and irreparably damaged due to water contamination to the hydraulic system.

At the time of the loss, Metro was insured pursuant to three insurance policies. American Home Insurance—American International Companies ("AIG") had issued Metro a liability policy; AIG had issued a second, "wrap policy", to the owner of the premises under construction in which Metro was a named insured; and the third policy, entitled a Contractor's Equipment Policy ("Equipment Policy"), was issued by Crum & Forster to Metro.

Subsequent to the Crane becoming inoperable, Metro submitted a claim under the Equipment Policy to Crum & Forster, who sent a representative to investigate. Crum & Forster concluded that the Crane suffered a mechanical breakdown due to water contamination to the hydraulic system. Crum & Forster further determined that the lessor, DeFillipis, who performed maintenance on the Crane, failed to diagnose the underlying problem, and negligently aggravated the problem by disconnecting the Crane's safety mechanisms.

Crum & Forster declined liability, asserting that the problems with the Crane were not covered by the Equipment Policy. Specifically, by letter of an insurance adjuster, Crum & Forster claimed:

[The] loss to the [Crane] was not due to [Metro's] liability, and further, the loss was not caused by an external cause. In addition, the policy excludes loss caused by (1) wear and tear (2) original defect and (3) mechanical breakdown or failure.

In view of the fact that you [Metro] were not liable for this loss and the policy excludes this loss, we are declining liability.

Letter of Al Castro, General Adjuster of Crum & Forster, dated November 5, 1986.

On or about June 22, 1988, DeFillipis commenced an action in New York State Supreme Court, Queens County, against Metro and various other defendants for the damages caused to the Crane and losses incurred as of result of the damage ("State Court Action"). On April 24, 1989, Metro commenced the within bankruptcy case by filing a petition for relief under chapter 11 of the Bankruptcy Code. Accordingly, the State Court Action was stayed.

By filing a complaint on March 19, 1991, Metro commenced the instant adversary proceeding ("Adversary Proceeding").

Pursuant to the Adversary Proceeding, Metro asserts three claims for relief: (1) from Defillipis, Metro seeks $500,000 in consequential damages as a result of loss of use of the Crane; (2) Metro seeks a declaration that Crum & Forster is required under the Equipment Policy to defend and/or indemnify Metro against DeFillipis' claims, plus damages, interest, costs and reasonable attorneys' fees; and (3) Metro seeks a declaration that AIG is required, under the liability and wrap insurance policies it issued and under which Metro is a named insured, to defend and/or indemnify Metro against DeFillipis' claims, plus damages, interest, costs and reasonable attorneys' fees. The Motion and the Cross-motion at bar, however, seek judgment as to the second claim for relief exclusively.

In its Motion for summary judgment, Crum & Forster asserts that the Equipment Policy (a) does not require Crum & Forster to furnish a defense; (b) is not a liability policy pursuant to which it must respond to negligence claims against the insured; (c) provides that the insured may not bring Crum & Forster into any action until the amount to be paid by the insured has been determined by judgment; and (d) prohibits any suit which essentially brings Crum & Forster into a controversy between the insured and another.

## DISCUSSION

### A. Crum & Forster's Motion for Summary Judgment

■ A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The burden is on the moving party to demonstrate the absence of a genuine dispute as to any

material fact. *See United States v. Bosurgi*, 530 F.2d 1105, 1110 (2d Cir.1976).

The Court finds that there exists at least one area of the Equipment Policy which contains language sufficiently ambiguous to create a material issue of fact and warrant denial of the Motion. The pertinent part of the Equipment Policy provides:

**Causes of Loss Not Insured**

We will not pay for a loss which is due to the following causes . . .:

(1) Wear and tear, gradual deterioration, corrosion, rust, dampness of atmosphere, freezing or extremes of temperature.

(2) An original defect in the property.

(3) *Mechanical or electrical breakdown or failure.*

Equipment Policy between Metro and Crum & Forster, dated October 29, 1984 (and amended thereafter) at 3 (emphasis added).

The term "mechanical . . . breakdown or failure" is not defined within the Equipment Policy. Obviously, pursuant to the quoted clause, if the damage to the hydraulic system caused by the water constitutes a "mechanical breakdown or failure", then Crum & Forster is not liable under the Equipment Policy. It is unclear, however, whether the Crane's hydraulic problem was the result of negligence, some external circumstance[1], an original defect, wear and tear or some other cause. Crum & Forster claims that the damage to the Crane is excluded from coverage by express terms of the Equipment Policy. The obligation to defend Metro, it maintains, therefore does not exist. The discrepancy as to whether the damage to the Crane was caused by an insured event creates an insurmountable issue of fact.

■ Crum & Forster moreover asserts that this Adversary Proceeding itself is prohibited by express terms of the Equipment Policy which address litigation

---

1. All parties regard the Crane's hydraulic problem as the cause of it's being rendered inoperable, without much dispute. Yet DeFillipis, the lessor, represented to Royal, its insurer, in a claim report dated September 13, 1986 that the damage to the Crane was the result of vandalism.

against the insurer. The relevant clause provides:

**Legal Action Against Us**

... If the loss is to property of others, no legal action may be brought against us until we agree in writing that you must pay a specified amount, or until the amount that must be paid has been determined by judgment after trial. You have no right to bring us into any action to determine your liability.

Equipment Policy at 5.

Crum & Forster contends that the language "no legal action may be brought against us until ..." includes the within Adversary Proceeding. Metro asserts that the language bars litigation seeking indemnification, damages, or determination of Metro's liability; but it does not prohibit the instant litigation which merely seeks to determine Crum & Forster's contractual duty to its insured. This dispute exposes another ambiguity as to the parties' interpretation of the Equipment Policy. Summary judgment is not possible because the intent of the parties (and other informative evidence) is necessary to establish the intended or legal meaning of this provision. Consequently, trial is required and the Motion is **DENIED.**

**B. Metro's Cross-motion for Partial Summary Judgment**

■ Metro has filed a Cross-motion for partial summary judgment declaring that Crum & Forster is required under the Equipment Policy to defend and/or indemnify Metro. The Cross-motion rests upon the ground that no triable issue of fact exists with respect to Crum & Forster's obligation under the Equipment Policy. The questions of fact previously discussed preclude summary judgment. Accordingly, the Cross-motion is **DENIED.**

**C. Royal's Intervention Motion**

■ Royal, who is lessor DeFillipis' insurer, has moved for an order authorizing its intervention in this Adversary Proceeding. Royal was required pursuant to its policy insuring DeFillipis to pay $244,-555.56 as a result of Crum & Forster's refusal to reimburse DeFillipis. Accordingly, Royal became subrogated to the rights of the lessor.

Section 1109(b) of the Bankruptcy Code provides, in applicable part, that a party in interest may raise, appear and be heard on any issue in a case under chapter 11. 11 U.S.C. § 1109(b). This section is to be broadly interpreted. *In re Citizen's Loan and Thrift Co.,* 7 B.R. 88, 90 (Bankr. N.D.Iowa 1980). The Court holds that Royal may appear in this Adversary Proceeding pursuant to section 1109(b).

Federal Rule 24(a) also governs intervention. In pertinent part the Rule provides:

**Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).

Royal possesses an interest in the action at bar. Royal is permitted to intervene pursuant to the applicable provisions of the Bankruptcy Code and the Federal Rules; accordingly, the Intervention Motion is **GRANTED.** Royal may file and serve its complaint on or before September 10, 1993.

**SO ORDERED.**